# EXHIBIT B



RECEIVED
SEP 2 0 2017
C.R. BARD, INC.
LAW DEPT.

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

GRANT B. STEVENS,

      Plaintiff,

    vs.

C. R. BARD, INC.; DAVOL, INC.;
BECTON, DICKINSON AND COMPANY,
a corporation,

      Defendants.

CIVIL DIVISION

Docket No.:

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of Plaintiff:
Grant B. Stevens

Counsel of Record for this Party:
Peter D. Friday, Esquire
Pa I.D. # 48746
pfriday@fridaylaw.com

Gregory J. Nicosia, Jr., Esquire
Pa I.D. # 321096
gnicosia@fridaylaw.com

Friday & Cox LLC
1405 McFarland Road
Pittsburgh, PA  15216-2320
Telephone:  (412) 561-4290
Facsimile:  (412) 561-4291

**JURY TRIAL DEMANDED**

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

GRANT B. STEVENS,

      Plaintiff,

    vs.

C. R. BARD, INC.; DAVOL, INC.;
BECTON, DICKINSON AND COMPANY, a
corporation,

      Defendants.

CIVIL DIVISION

Docket No.:

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by an attorney and by filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Lawyer Referral Service**
**The Allegheny County Bar Association**
**11th Floor Koppers Building, 436 Seventh Avenue**
**Pittsburgh, PA 15219**
**Telephone: (412) 261-5555**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

GRANT B. STEVENS,                           CIVIL DIVISION

      Plaintiff,                            Docket No.:

    vs.

C. R. BARD, INC.; DAVOL, INC.;
BECTON, DICKINSON AND COMPANY, a
corporation,

      Defendants.

## COMPLAINT IN CIVIL ACTION

Plaintiff Grant B. Stevens, by and through his attorneys Peter D. Friday, Esquire, Gregory

J. Nicosia, Jr., Esquire, and Friday & Cox LLC complains and alleges as follows:

1.    Plaintiff Grant B. Stevens is an adult individual residing at 1110 Highfield Court,

Apartment 101, Bethel Park, Allegheny County, Pennsylvania 15102.

2.    Defendant C. R. Bard, Inc. ("Bard") is a New Jersey corporation with a principal

place of business at 730 Central Avenue, Murray Hill, New Jersey 07974.

3.    Defendant Davol, Inc. ("Davol") is a Rhode Island corporation with a principal

place of business at 100 Crossings Boulevard, Warwick, Rhode Island 02886.

4.    In or about 1980, Bard acquired Davol as a subsidiary.

5.    Defendant Becton, Dickinson and Company ("BD") is a New Jersey corporation

with a principal place of business at 1 Becton Drive, Franklin Lakes, New Jersey 07417.

6.    On or about April 23, 2017, BD announced in a public press release that it

acquired Bard for $317.00 per Bard common share in cash and stock, for a total consideration of

$24 billion.

3

7.      At all relevant times, all of the above-named defendants were registered to conduct business in the Commonwealth of Pennsylvania and regularly conducted business in and through Allegheny County, Pennsylvania.

8.      At all relevant times, defendants regularly sold, marketed, advertised, distributed and profited from the sale, marketing, advertising and distribution of medical devices used for hernia repair in and through Allegheny County, Pennsylvania.

9.      At all relevant times, defendants designed, developed, manufactured, assembled, distributed, tested, marketed, promoted, sold and otherwise placed into the stream of commerce, for profit, the at issue Bard Ventralight ST Mesh with serial no. HUYJ0789 and product code 5955790. The at issue mesh is identified as being an ellipse shape with dimesons of 7" x 9" (17.8 cm x 22.9 cm).

10.     The at issue Ventralight ST Mesh is an uncoated lightweight monofilament polypropylene mesh on the anterior side with an absorbable hydrogel barrier based on Sepra Technology on the posterior side and is commonly used for laparoscopic ventral hernia repair.

11.     At all relevant times, defendants held themselves out to the public as being knowledgeable, skilled and experienced in the design, manufacture, production, assembly, distribution and sale of medical devices used for hernia repair, including the at issue Ventralight ST polypropylene mesh.

12.     As such, defendants had the requisite knowledge, skill and expertise to know that implanted devices, such as polypropylene mesh, must be chemically inert, non-carcinogenic, and able to withstand mechanical stress. Implanted devices, such as polypropylene mesh, must also not be physically modified by tissue fluids, not allow tissue infiltration, not incite an inflammatory or foreign body cell reaction, and not produce allergic reactions.

13. However, polypropylene is not biologically inert in the human body, as it is known to expand as well as shrink, and can cause serious injury to patients, significantly impacting their quality of life.

14. Moreover, it is well known within the scientific and medical community that the polypropylene used for surgical treatment begins to degrade after implantation in the human body, which can lead to infection and irritation, and result in serious pain as the body tries to rid itself of the foreign material.

15. In addition, scientific literature regarding the safety and effectiveness of these devices suggested that polypropylene mesh repair does not improve symptomatic results or quality of life over traditional non-mesh repair.

16. On or about July 13, 2011, the Food and Drug Administration ("FDA") issued a Safety Communication regarding Surgical Mesh for Hernia Repairs. Therein, the FDA advised hundreds of thousands of hernia repair operations are performed each year both with and without surgical mesh.

17. FDA further advised it received numerous reports of complications associated with the mesh. The complications include adverse reactions to the mesh, adhesions (when the loops of the intestines adhere to each other or the mesh), and injuries to nearby organs, nerves or blood vessels. Other reported complications include infection chronic pain and hernia recurrence.

18. Defendants were fully aware of the dangers the defective products it was placing into the stream of commerce posed to its customers, specifically Ventralight ST polypropylene mesh, which has repeatedly been shown to pose an unreasonable risk of human body inflammation, granuloma formation, foreign body reaction, excessive scar tissue formation and long-term complications.

5

19.     Additionally, in the July 13, 2011 Safety Communication, the FDA concluded that:

> a mesh procedure may put the patient at risk for requiring additional surgery or for the development of new complications.  Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible.

20.     The information contained in the FDA's Safety Communication of July 13, 2011 is equally applicable to the subject synthetic Ventralight ST polypropylene mesh and the information was known or knowable to defendants, and was not disclosed in oral or written communications, directed to consumer advertising in the form of patient brochures, instructions for use or labeling.

21.     Despite the abundance of scientific and medical information available relating to the dangerous properties and serious risks of polypropylene mesh, defendants deliberately ignored these dangers and aggressively promoted Ventralight ST polypropylene mesh to healthcare providers and consumers.

22.     Defendants expressly warranted that the Ventralight ST polypropylene mesh was safe and fit for use by consumers, that it was of merchantable quality, and that it was adequately tested and fit for its intended use, even though it was not safe and had numerous side effects, many of which defendants did not accurately warn about.

23.     The Ventralight ST polypropylene mesh, with its unusual design, was nothing more than a marketing ploy to capture the revenue stream from the lucrative hernia mesh market.

24.     Defendants designed, developed, manufactured, assembled, distributed, tested, marketed, promoted and/or sold to the public, including plaintiff, for profit, the at issue Ventralight ST polypropylene mesh in a defective condition such that the at issue Ventralight ST polypropylene mesh failed and had to be surgically removed after numerous complications arose.

6

25.    On or about April 22, 2015, plaintiff underwent surgery performed by Harry Sell, Jr., M.D. at UPMC Mercy Hospital in Pittsburgh, Pennsylvania to repair a right ventral incisional hernia.

26.    At that time, Dr. Sell laparoscopically implanted the at issue Ventralight ST polypropylene mesh into plaintiff's body to repair the right ventral incisional hernia.

27.    Plaintiff's medical records indicate that following the operation he was recovering appropriately following the impanation of the at issue mesh.

28.    On May 6, 2015, plaintiff presented to the UPMC Mercy Hospital Emergency Department with complaints of fever and chills.

29.    Plaintiff was found to be febrile and tachycardic and diagnosed with an infection at the incision site, which required wound VAC placement.

30.    At or about this time, it is believed and therefore averred that the mesh separated, detached or otherwise failed and became exposed, requiring physicians to trim portions of the mesh protruding from the skin on several occasions.

31.    Between May 6, 2015 and October 11, 2016, a visible protrusion at the lateral aspect of the right subcostal scar developed and steadily worsened, eventually becoming 6 to 7 cm in diameter.

32.    During this time, plaintiff repeatedly sought medical treatment for the worsening protrusion, pain, discomfort and secondary symptoms associated with the mesh failure.

33.    In or about October of 2016, plaintiff learned that the at issue Ventralight ST polypropylene mesh had to be removed because the mesh failed, causing plaintiff's hernia recurred and posed a serious risk of death or bodily harm.

7

34. On or about January 27, 2017, plaintiff underwent a surgical separation of the at issue Ventralight ST polypropylene mesh herniorrhaphy.

35. As of the filing of this complaint, plaintiff is more likely than not to have continuing procedures relating to injuries suffered from the defective device.

36. Plaintiff suffered the following injuries as a direct and proximate result of the failure of the at issue Ventralight ST polypropylene mesh, some or all of which may be permanent in nature:

    a. Postoperative abdominal wound infection;

    b. Systemic bodily infection;

    c. Sepsis without evidence of severe sepsis;

    d. Tacycardia;

    e. Abdominal pain;

    f. Abdominal weakness;

    g. Abdominal wall failure;

    h. Recurrent, ventral incisional hernia;

    i. Gastrointestinal and urinary dysfunction;

    j. Severe scarring and disfigurement;

    k. Nervousness, emotional tension, anxiety and depression; and

    l. Other injuries to be proven at trial.

37. Plaintiff's injuries were a direct and proximate result of the dangerous, hazardous and defective condition of the at issue Ventralight ST polypropylene mesh, which at all relevant times were being used for their intended purpose in a normal and foreseeable manner by plaintiff.

38.    As a direct and proximate result of the dangerous, hazardous and defective condition of Ventralight ST polypropylene mesh, plaintiff suffered the following damages, some or all of which may be ongoing:

    a.   Great pain, suffering, inconvenience, embarrassment, mental anguish, emotional and psychological trauma;

    b.   Plaintiff will be required to expend large sums of money for treatment and care, including by not limited to, skin grafting, plastic surgery, hospitalization, medical supplies, surgical appliances, rehabilitation and therapeutic treatment, prescription medication, and other attendant services;

    c.   Plaintiff was required to undergo plastic surgery, which was caused him substantial, prolonged pain and suffering;

    d.   Plaintiff was unable to walk for several days to due to great pain following his various surgeries;

    e.   Plaintiff's gastrointestinal and urinary caused him, resulting in considerable inconvenience, embarrassment and emotional distress;

    f.   Plaintiff's future earning capacity has been reduced and may be permanently impaired;

    g.   Inability to enjoy various pleasures of life and participate in various activities that were previously enjoyed;

    h.   Permanent scarring and disfigurement; and

    i.   Loss and impairment of general health, strength and vitality.

**COUNT I**
*Grant B. Stevens v. C.R. Bard, Inc.*
**Strict Products Liability**

39.    All of the preceding paragraphs are incorporated herein by reference.

40.    At all relevant times, defendant designed, tested, manufactured, supplied, sold and/or otherwise placed into the stream of commerce the at issue Ventralight ST polypropylene mesh, in a defective condition, unreasonably dangerous and unsafe for its intended and foreseeable use.

9

41.     At all relevant times, defendant was in the business of designing, constructing, testing, marketing, distributing and selling the at issue Ventralight ST polypropylene mesh to the ultimate users and consumers of these products, including plaintiff.

42.     At all relevant times, the at issue Ventralight ST polypropylene mesh was defective in its design, manufacture and warnings, causing the at issue Ventralight ST polypropylene mesh to fail while being used for its intended purpose in a reasonable foreseeable manner.

43.     At all relevant times, the at issue Ventralight ST polypropylene mesh manufactured, sold, distributed and promoted by Defendant was defective because due to inadequate post-marketing warnings and/or instructions.

44.     At all relevant times, defendant negligently, intentionally, deliberately and outrageously failed to disclose to plaintiff and other similarly situated persons adequate warnings of the nature and extent of the danger resulting from the use of their products.

45.     Plaintiff and his physicians were unaware of the unreasonably dangerous condition of the at issue Ventralight ST polypropylene mesh prior to or at the time of the subject incident.

46.     Plaintiff and his physicians used the Ventralight ST polypropylene mesh as directed for its intended purpose in hernia repair and neither plaintiff nor his physician altered or modified the at issue Ventralight ST polypropylene mesh in any way before it was implanted into plaintiff.

47.     At all relevant times, the at issue Ventralight ST polypropylene mesh was in a defective condition that was unknowable, unacceptable and unreasonably dangerous to the average or ordinary consumer, including plaintiff.

48.     At all relevant times, the at issue Ventralight ST polypropylene mesh was in an unreasonably defective condition, such that a reasonable person would conclude that the probability and seriousness of harm caused by the at issue Ventralight ST polypropylene mesh failing and causing substantial bodily injury outweighs the burdens or costs of taking precautionary measures in the design, manufacture, sale, distribution and warnings of the at issue Ventralight ST polypropylene mesh.

49.     Accordingly, the at issue Ventralight ST polypropylene mesh implanted into plaintiff was in a defective condition, unreasonably dangerous and unsafe for its intended and reasonably foreseeable uses as contemplated by § 402A of the Restatement (Second) of Torts, in the following particulars:

   a.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner such that it was susceptible to failing during normal, intended foreseeable manner;

   b.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner such that it failed during normal, intended foreseeable manner;

   c.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it was not biologically inert;

   d.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner the mesh material was able to expand and/or contract, thereby causing serious harm;

   e.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it allowed tissue infiltration;

   f.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it was unreasonably susceptible to becoming and/or transmitting systemic bodily infection, including sepsis;

   g.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it became and/or transmitted systemic bodily infection, including sepsis;

h. The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that caused inflammation which contributed to the mesh's failure;

i. In designing, manufacturing, selling and/or distributing the at issue Ventralight ST polypropylene mesh without adequate safety features, including but not limited to, features that would prevent the at issue Ventralight ST polypropylene mesh from degrading after implantation; and

j. In failing to warn foreseeable users, including plaintiff and his physicians, of the latent dangers of the at issue Ventralight ST polypropylene mesh, while being used in a normal, intended and foreseeable manner.

50.     The incident and resulting damages were a direct and proximate result of the defects in the at issue Ventralight ST polypropylene mesh, all of which existed at the time that the products were designed, manufactured, distributed, tested, sold and otherwise placed into the stream of commerce by defendant.

51.     Therefore, defendant is strictly liable for the damages incurred by plaintiff as a result of this incident.

WHEREFORE, plaintiff demands compensatory and punitive damages against defendant, in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees as may be determined by the Court.

## COUNT II
### *Grant B. Stevens v. C.R. Bard, Inc.*
### Negligence

52.     All of the preceding paragraphs are incorporated herein by reference.

53.     Defendant knew the at issue Ventralight ST polypropylene mesh was to be used by consumers without inspection for defects.

54.     The at issue Ventralight ST polypropylene mesh was manufactured, designed, tested, marketed, sold, supplied, distributed and/or otherwise placed into the stream of commerce by defendant containing a defect in the design, manufacture, assembly and warnings.

55.     The subject incident and plaintiff's resulting damages and injuries were directly and proximately caused by the negligence, carelessness and recklessness of defendant in the following manners:

a.  In designing, testing, producing, and/or manufacturing the at issue Ventralight ST polypropylene mesh in a defective condition, unreasonably dangerous to its prospective users, including plaintiff;

b.  In designing, testing, producing and/or manufacturing the at issue Ventralight ST polypropylene mesh capable of failing, degrading, and causing serious injuries while being used in their intended and foreseeable manner;

c.  In designing, distributing, testing and/or manufacturing the at issue Ventralight ST polypropylene mesh from defective and/or inadequate materials for their intended and foreseeable use;

d.  In designing, distributing, testing and/or manufacturing the at issue Ventralight ST polypropylene mesh such that it is not biologically inert;

e.  In failing to design, test, manufacture, sell, distribute and supply the at issue Ventralight ST polypropylene mesh with adequate safeguards and/or features to prevent it from degrading;

f.  In failing to properly design and manufacture the at issue Ventralight ST polypropylene mesh so that they were reasonably safe for its intended and foreseeable use by the average consumer, including plaintiff and his physicians;

g.  In failing to properly and adequately inspect the at issue Ventralight ST polypropylene mesh so as to discover the defects contained therein;

h.  In failing to properly test the capability of the at issue Ventralight ST polypropylene mesh for degrading and/or failing before placing it into the stream of commerce;

i.  In failing to adequately warn prospective users of the unreasonable dangers of the at issue Ventralight ST polypropylene mesh;

j.  In failing to place warnings on the at issue Ventralight ST polypropylene mesh alerting prospective users, including plaintiff of the unreasonable danger of failing, degrading and/or becoming infected while using the subject products in a reasonable, intended and foreseeable manner;

13

k. In negligently designing and manufacturing the at issue Ventralight ST polypropylene mesh in a manner that they were susceptible to failing, degrading and/or becoming infected and injuring users during its normal, intended and foreseeable operation; and

l. In failing to exercise due care under the circumstances in the manufacturing, designing, marketing, testing, distributing and selling of the defective Ventralight ST polypropylene mesh.

56.     Some or all of defendant's above-described acts and omissions were wanton, willful, reckless and outrageous as defendant knowingly placed defective products, including the at issue Ventralight ST polypropylene mesh into the stream of commerce.

57.     Said acts or omissions were taken despite defendant's actual and/or constructive knowledge that its Ventralight ST polypropylene mesh have been shown to cause serious injury, due to the defective nature of those products, as specified above.

WHEREFORE, plaintiff demands judgment for compensatory and punitive damages against defendant in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees as permitted by the Court.

**COUNT III**
*Grant B. Stevens v. C.R. Bard, Inc.*
**Breach of Warranties**

58.     All of the preceding paragraphs are incorporated herein by reference.

59.     Defendant expressly and/or impliedly warranted that the at issue Ventralight ST polypropylene mesh was of merchantable quality, safe and fit for its particular purpose when used under ordinary conditions and used in an ordinary or foreseeable manner.

60.     At all relevant times, plaintiff and his physicians used the at issue Ventralight ST polypropylene mesh in a manner consistent with its intended and foreseeable use and function and for the particular purpose for which it was designed, manufactured, marketed and sold.

14

61.     Defendant materially breached the warranties of merchantability and fitness for a particular purpose by negligently, carelessly and recklessly designing, manufacturing, assembling, supplying, distributing and/or selling the at issue Ventralight ST polypropylene mesh in a manner that they were susceptible to failing, degrading, becoming infected and injuring users during their normal, intended and foreseeable operation and/or in failing to exercise due care under the circumstances in the manufacturing, designing, distributing, marketing, producing and selling of the defective products.

62.     As a direct and proximate result of the aforesaid warranty breaches, the at issue Ventralight ST polypropylene mesh failed and were caused to degrade, becoming infected and otherwise fail while in use, resulting in plaintiff sustaining the severe bodily injuries, set forth above.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees permitted by the Court.

**COUNT IV**
*Grant B. Stevens v. Davol, Inc.*
**Strict Products Liability**

63.     All of the preceding paragraphs are incorporated herein by reference.

64.     At all relevant times, defendant designed, tested, manufactured, supplied, sold and/or otherwise placed into the stream of commerce the at issue Ventralight ST polypropylene mesh, in a defective condition, unreasonably dangerous and unsafe for its intended and foreseeable use.

15

65.     At all relevant times, defendant was in the business of designing, constructing, testing, marketing, distributing and selling the at issue Ventralight ST polypropylene mesh to the ultimate users and consumers of these products, including plaintiff.

66.     At all relevant times, the at issue Ventralight ST polypropylene mesh was defective in its design, manufacture and warnings, causing the at issue Ventralight ST polypropylene mesh to fail while being used for its intended purpose in a reasonable foreseeable manner.

67.     At all relevant times, the at issue Ventralight ST polypropylene mesh manufactured, sold, distributed and promoted by Defendant was defective because due to inadequate post-marketing warnings and/or instructions.

68.     At all relevant times, defendant negligently, intentionally, deliberately and outrageously failed to disclose to plaintiff and other similarly situated persons adequate warnings of the nature and extent of the danger resulting from the use of their products.

69.     Plaintiff and his physicians were unaware of the unreasonably dangerous condition of the at issue Ventralight ST polypropylene mesh prior to or at the time of the subject incident.

70.     Plaintiff and his physicians used the Ventralight ST polypropylene mesh as directed for its intended purpose in hernia repair and neither plaintiff nor his physician altered or modified the at issue Ventralight ST polypropylene mesh in any way before it was implanted into plaintiff.

71.     At all relevant times, the at issue Ventralight ST polypropylene mesh was in a defective condition that was unknowable, unacceptable and unreasonably dangerous to the average or ordinary consumer, including plaintiff.

16

72.     At all relevant times, the at issue Ventralight ST polypropylene mesh was in an unreasonably defective condition, such that a reasonable person would conclude that the probability and seriousness of harm caused by the at issue Ventralight ST polypropylene mesh failing and causing substantial bodily injury outweighs the burdens or costs of taking precautionary measures in the design, manufacture, sale, distribution and warnings of the at issue Ventralight ST polypropylene mesh.

73.     Accordingly, the at issue Ventralight ST polypropylene mesh implanted into plaintiff was in a defective condition, unreasonably dangerous and unsafe for its intended and reasonably foreseeable uses as contemplated by § 402A of the Restatement (Second) of Torts, in the following particulars:

     a.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner such that it was susceptible to failing during normal, intended foreseeable manner;

     b.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner such that it failed during normal, intended foreseeable manner;

     c.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it was not biologically inert;

     d.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner the mesh material was able to expand and/or contract, thereby causing serious harm;

     e.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it allowed tissue infiltration;

     f.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it was unreasonably susceptible to becoming and/or transmitting systemic bodily infection, including sepsis;

     g.   The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it became and/or transmitted systemic bodily infection, including sepsis;

h.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that caused inflammation which contributed to the mesh's failure;

i.  In designing, manufacturing, selling and/or distributing the at issue Ventralight ST polypropylene mesh without adequate safety features, including but not limited to, features that would prevent the at issue Ventralight ST polypropylene mesh from degrading after implantation; and

j.  In failing to warn foreseeable users, including plaintiff and his physicians, of the latent dangers of the at issue Ventralight ST polypropylene mesh, while being used in a normal, intended and foreseeable manner.

74.  The incident and resulting damages were a direct and proximate result of the defects in the at issue Ventralight ST polypropylene mesh, all of which existed at the time that the products were designed, manufactured, distributed, tested, sold and otherwise placed into the stream of commerce by defendant.

75.  Therefore, defendant is strictly liable for the damages incurred by plaintiff as a result of this incident.

WHEREFORE, plaintiff demands compensatory and punitive damages against defendant, in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees as may be determined by the Court.

### COUNT V
*Grant B. Stevens v. Davol, Inc.*
### Negligence

76.  All of the preceding paragraphs are incorporated herein by reference.

77.  Defendant knew the at issue Ventralight ST polypropylene mesh was to be used by consumers without inspection for defects.

78.  The at issue Ventralight ST polypropylene mesh was manufactured, designed, tested, marketed, sold, supplied, distributed and/or otherwise placed into the stream of commerce by defendant containing a defect in the design, manufacture, assembly and warnings.

79.     The subject incident and plaintiff's resulting damages and injuries were directly and proximately caused by the negligence, carelessness and recklessness of defendant in the following manners:

  a. In designing, testing, producing, and/or manufacturing the at issue Ventralight ST polypropylene mesh in a defective condition, unreasonably dangerous to its prospective users, including plaintiff;

  b. In designing, testing, producing and/or manufacturing the at issue Ventralight ST polypropylene mesh capable of failing, degrading, and causing serious injuries while being used in their intended and foreseeable manner;

  c. In designing, distributing, testing and/or manufacturing the at issue Ventralight ST polypropylene mesh from defective and/or inadequate materials for their intended and foreseeable use;

  d. In designing, distributing, testing and/or manufacturing the at issue Ventralight ST polypropylene mesh such that it is not biologically inert;

  e. In failing to design, test, manufacture, sell, distribute and supply the at issue Ventralight ST polypropylene mesh with adequate safeguards and/or features to prevent it from degrading;

  f. In failing to properly design and manufacture the at issue Ventralight ST polypropylene mesh so that they were reasonably safe for its intended and foreseeable use by the average consumer, including plaintiff and his physicians;

  g. In failing to properly and adequately inspect the at issue Ventralight ST polypropylene mesh so as to discover the defects contained therein;

  h. In failing to properly test the capability of the at issue Ventralight ST polypropylene mesh for degrading and/or failing before placing it into the stream of commerce;

  i. In failing to adequately warn prospective users of the unreasonable dangers of the at issue Ventralight ST polypropylene mesh;

  j. In failing to place warnings on the at issue Ventralight ST polypropylene mesh alerting prospective users, including plaintiff of the unreasonable danger of failing, degrading and/or becoming infected while using the subject products in a reasonable, intended and foreseeable manner;

19

k.  In negligently designing and manufacturing the at issue Ventralight ST polypropylene mesh in a manner that they were susceptible to failing, degrading and/or becoming infected and injuring users during its normal, intended and foreseeable operation; and

l.  In failing to exercise due care under the circumstances in the manufacturing, designing, marketing, testing, distributing and selling of the defective Ventralight ST polypropylene mesh.

80.  Some or all of defendant's above-described acts and omissions were wanton, willful, reckless and outrageous as defendant knowingly placed defective products, including the at issue Ventralight ST polypropylene mesh into the stream of commerce.

81.  Said acts or omissions were taken despite defendant's actual and/or constructive knowledge that its Ventralight ST polypropylene mesh have been shown to cause serious injury, due to the defective nature of those products, as specified above.

WHEREFORE, plaintiff demands judgment for compensatory and punitive damages against defendant in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees as permitted by the Court.

### COUNT VI
*Grant B. Stevens v. Davol, Inc.*
**Breach of Warranties**

82.  All of the preceding paragraphs are incorporated herein by reference.

83.  Defendant expressly and/or impliedly warranted that the at issue Ventralight ST polypropylene mesh was of merchantable quality, safe and fit for its particular purpose when used under ordinary conditions and used in an ordinary or foreseeable manner.

84.  At all relevant times, plaintiff and his physicians used the at issue Ventralight ST polypropylene mesh in a manner consistent with its intended and foreseeable use and function and for the particular purpose for which it was designed, manufactured, marketed and sold.

20

85.     Defendant materially breached the warranties of merchantability and fitness for a particular purpose by negligently, carelessly and recklessly designing, manufacturing, assembling, supplying, distributing and/or selling the at issue Ventralight ST polypropylene mesh in a manner that they were susceptible to failing, degrading, becoming infected and injuring users during their normal, intended and foreseeable operation and/or in failing to exercise due care under the circumstances in the manufacturing, designing, distributing, marketing, producing and selling of the defective products.

86.     As a direct and proximate result of the aforesaid warranty breaches, the at issue Ventralight ST polypropylene mesh failed and were caused to degrade, becoming infected and otherwise fail while in use, resulting in plaintiff sustaining the severe bodily injuries, set forth above.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees permitted by the Court.

## COUNT VII
*Grant B. Stevens v. Becton, Dickinson and Company*
### Strict Products Liability

87.     All of the preceding paragraphs are incorporated herein by reference.

88.     At all relevant times, defendant designed, tested, manufactured, supplied, sold and/or otherwise placed into the stream of commerce the at issue Ventralight ST polypropylene mesh, in a defective condition, unreasonably dangerous and unsafe for its intended and foreseeable use.

89.    At all relevant times, defendant was in the business of designing, constructing, testing, marketing, distributing and selling the at issue Ventralight ST polypropylene mesh to the ultimate users and consumers of these products, including plaintiff.

90.    At all relevant times, the at issue Ventralight ST polypropylene mesh was defective in its design, manufacture and warnings, causing the at issue Ventralight ST polypropylene mesh to fail while being used for its intended purpose in a reasonable foreseeable manner.

91.    At all relevant times, the at issue Ventralight ST polypropylene mesh manufactured, sold, distributed and promoted by Defendant was defective because due to inadequate post-marketing warnings and/or instructions.

92.    At all relevant times, defendant negligently, intentionally, deliberately and outrageously failed to disclose to plaintiff and other similarly situated persons adequate warnings of the nature and extent of the danger resulting from the use of their products.

93.    Plaintiff and his physicians were unaware of the unreasonably dangerous condition of the at issue Ventralight ST polypropylene mesh prior to or at the time of the subject incident.

94.    Plaintiff and his physicians used the Ventralight ST polypropylene mesh as directed for its intended purpose in hernia repair and neither plaintiff nor his physician altered or modified the at issue Ventralight ST polypropylene mesh in any way before it was implanted into plaintiff.

95.    At all relevant times, the at issue Ventralight ST polypropylene mesh was in a defective condition that was unknowable, unacceptable and unreasonably dangerous to the average or ordinary consumer, including plaintiff.

96.     At all relevant times, the at issue Ventralight ST polypropylene mesh was in an unreasonably defective condition, such that a reasonable person would conclude that the probability and seriousness of harm caused by the at issue Ventralight ST polypropylene mesh failing and causing substantial bodily injury outweighs the burdens or costs of taking precautionary measures in the design, manufacture, sale, distribution and warnings of the at issue Ventralight ST polypropylene mesh.

97.     Accordingly, the at issue Ventralight ST polypropylene mesh implanted into plaintiff was in a defective condition, unreasonably dangerous and unsafe for its intended and reasonably foreseeable uses as contemplated by § 402A of the Restatement (Second) of Torts, in the following particulars:

a.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner such that it was susceptible to failing during normal, intended foreseeable manner;

b.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner such that it failed during normal, intended foreseeable manner;

c.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it was not biologically inert;

d.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner the mesh material was able to expand and/or contract, thereby causing serious harm;

e.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it allowed tissue infiltration;

f.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it was unreasonably susceptible to becoming and/or transmitting systemic bodily infection, including sepsis;

g.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that it became and/or transmitted systemic bodily infection, including sepsis;

23

    h.  The at issue Ventralight ST mesh was designed, manufactured, distributed and/or sold in a manner that caused inflammation which contributed to the mesh's failure;

    i.  In designing, manufacturing, selling and/or distributing the at issue Ventralight ST polypropylene mesh without adequate safety features, including but not limited to, features that would prevent the at issue Ventralight ST polypropylene mesh from degrading after implantation; and

    j.  In failing to warn foreseeable users, including plaintiff and his physicians, of the latent dangers of the at issue Ventralight ST polypropylene mesh, while being used in a normal, intended and foreseeable manner.

98.     The incident and resulting damages were a direct and proximate result of the defects in the at issue Ventralight ST polypropylene mesh, all of which existed at the time that the products were designed, manufactured, distributed, tested, sold and otherwise placed into the stream of commerce by defendant.

99.     Therefore, defendant is strictly liable for the damages incurred by plaintiff as a result of this incident.

WHEREFORE, plaintiff demands compensatory and punitive damages against defendant, in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees as may be determined by the Court.

## COUNT VIII
*Grant B. Stevens v. Becton, Dickinson and Company*
**Negligence**

100.    All of the preceding paragraphs are incorporated herein by reference.

101.    Defendant knew the at issue Ventralight ST polypropylene mesh was to be used by consumers without inspection for defects.

102.    The at issue Ventralight ST polypropylene mesh was manufactured, designed, tested, marketed, sold, supplied, distributed and/or otherwise placed into the stream of commerce by defendant containing a defect in the design, manufacture, assembly and warnings.

24

103.   The subject incident and plaintiff's resulting damages and injuries were directly and proximately caused by the negligence, carelessness and recklessness of defendant in the following manners:

a.  In designing, testing, producing, and/or manufacturing the at issue Ventralight ST polypropylene mesh in a defective condition, unreasonably dangerous to its prospective users, including plaintiff;

b.  In designing, testing, producing and/or manufacturing the at issue Ventralight ST polypropylene mesh capable of failing, degrading, and causing serious injuries while being used in their intended and foreseeable manner;

c.  In designing, distributing, testing and/or manufacturing the at issue Ventralight ST polypropylene mesh from defective and/or inadequate materials for their intended and foreseeable use;

d.  In designing, distributing, testing and/or manufacturing the at issue Ventralight ST polypropylene mesh such that it is not biologically inert;

e.  In failing to design, test, manufacture, sell, distribute and supply the at issue Ventralight ST polypropylene mesh with adequate safeguards and/or features to prevent it from degrading;

f.  In failing to properly design and manufacture the at issue Ventralight ST polypropylene mesh so that they were reasonably safe for its intended and foreseeable use by the average consumer, including plaintiff and his physicians;

g.  In failing to properly and adequately inspect the at issue Ventralight ST polypropylene mesh so as to discover the defects contained therein;

h.  In failing to properly test the capability of the at issue Ventralight ST polypropylene mesh for degrading and/or failing before placing it into the stream of commerce;

i.  In failing to adequately warn prospective users of the unreasonable dangers of the at issue Ventralight ST polypropylene mesh;

j.  In failing to place warnings on the at issue Ventralight ST polypropylene mesh alerting prospective users, including plaintiff of the unreasonable danger of failing, degrading and/or becoming infected while using the subject products in a reasonable, intended and foreseeable manner;

25

      k.  In negligently designing and manufacturing the at issue Ventralight ST polypropylene mesh in a manner that they were susceptible to failing, degrading and/or becoming infected and injuring users during its normal, intended and foreseeable operation; and

      l.  In failing to exercise due care under the circumstances in the manufacturing, designing, marketing, testing, distributing and selling of the defective Ventralight ST polypropylene mesh.

104.  Some or all of defendant's above-described acts and omissions were wanton, willful, reckless and outrageous as defendant knowingly placed defective products, including the at issue Ventralight ST polypropylene mesh into the stream of commerce.

105.  Said acts or omissions were taken despite defendant's actual and/or constructive knowledge that its Ventralight ST polypropylene mesh have been shown to cause serious injury, due to the defective nature of those products, as specified above.

WHEREFORE, plaintiff demands judgment for compensatory and punitive damages against defendant in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees as permitted by the Court.

## COUNT IX
*Grant B. Stevens v. Becton, Dickinson and Company*
**Breach of Warranties**

106.  All of the preceding paragraphs are incorporated herein by reference.

107.  Defendant expressly and/or impliedly warranted that the at issue Ventralight ST polypropylene mesh was of merchantable quality, safe and fit for its particular purpose when used under ordinary conditions and used in an ordinary or foreseeable manner.

108.  At all relevant times, plaintiff and his physicians used the at issue Ventralight ST polypropylene mesh in a manner consistent with its intended and foreseeable use and function and for the particular purpose for which it was designed, manufactured, marketed and sold.

26

109.    Defendant materially breached the warranties of merchantability and fitness for a particular purpose by negligently, carelessly and recklessly designing, manufacturing, assembling, supplying, distributing and/or selling the at issue Ventralight ST polypropylene mesh in a manner that they were susceptible to failing, degrading, becoming infected and injuring users during their normal, intended and foreseeable operation and/or in failing to exercise due care under the circumstances in the manufacturing, designing, distributing, marketing, producing and selling of the defective products.

110.    As a direct and proximate result of the aforesaid warranty breaches, the at issue Ventralight ST polypropylene mesh failed and were caused to degrade, becoming infected and otherwise fail while in use, resulting in plaintiff sustaining the severe bodily injuries, set forth above.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of the jurisdictional amount for arbitration, together with such interest, costs and fees permitted by the Court.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

**FRIDAY AND COX LLC**

*/s/ Gregory J. Nicosia, Jr.*
Peter D. Friday, Esquire
Pa I.D. # 48746

Gregory J. Nicosia, Jr., Esquire
Pa I.D. # 321096

Friday & Cox LLC
1405 McFarland Road
Pittsburgh, PA  15216
(412) 561-4290 (Phone)
(412) 561-4291 (Fax)

27

## **VERIFICATION**

I, Grant B. Stevens, being duly sworn according to law, depose and say that the facts contained in the foregoing are true and correct to the best of my knowledge, information and belief.

I understand that false statements herein are made subject to the penalties of 18 Pa. Con. Stat. § 4904 relating to unsworn falsification to authorities.

Grant B. Stevens

Date: 9/20/17

**Zachary Streets**

| | |
|---|---|
| **From:** | webmaster.pro@county.allegheny.pa.us |
| **Sent:** | Friday, September 22, 2017 4:40 PM |
| **To:** | Paralegals |
| **Cc:** | promail@county.allegheny.pa.us |
| **Subject:** | Filing Confirmation CaseID : TMP556862& Submission ID : 143468 |

## Submission Details

*The following electronic filings have been received by Allegheny County Department of Court Records, civil/Family Division. Please have this information available to check the status of these filings, or if you wish to submit exhibits by mail*

| Case Number | TMP556862 | Case Desc | Stevens vs Becton, Dickinson, And Company |
|---|---|---|---|
| Submission ID | 143468 | Status | Pending |
| Company ID | | Sheriff's Amount | $0 |
| Civil/Family Division Amount $189 | | Total Amount | $189 |

| Docket Type | Docket Number | Client ID | Docket Date/Time |
|---|---|---|---|
| Complaint | 1 | Stevens, Grant | 9/22/2017 16:39 |

**Files Received: Stevens,Grant-ComplaintinCivilAction.pdf**

Your filings are being processed. Be advised this case is not officially filed until it is approved by Allegheny County Department of Court Records, Civil/Family Division. If approved, you will be notified via an electronic receipt and the official date and time of filing will be the date and time listed above At that time, your Credit Card will be debited. In the event that this filing is not approved, your account will not be debited.

## *Thank you for using the DCR, Civil/Family Division Electronic Filing and Retrieval System.*

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, forwarding, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.



US POSTAGE $07.08⁹
First-Class
Mailed From 15216
09/22/2017
032A 0061835994

RECEIVED
SEP 26 2017
C.R. BARD, INC.
LAW DEPT.

Attorneys At Law
1405 McFarland Road • Pittsburgh, PA 15216

C. R. Bard, Inc.
730 Central Avenue
Murray Hill, NJ 07974

7017 0660 0000 1569 8006