IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GRANT B. STEVENS,

      Plaintiff,                      17cv1388
                                          ELECTRONICALLY FILED

      v.

C. R. BARD, INC, DAVOL, INC., BECTON,
DICKINSON AND COMPANY
*a corporation*,

      Defendants.

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. Doc. no. 28. Plaintiff has filed a response and Defendants have a filed a Reply. Doc. nos. 41 and 44, respectively. The matter is now ripe for adjudication. For the reasons set forth below, the Court will deny the Motion to Dismiss.

### I. BACKGROUND

The Court accepts the following facts as true solely for the purposes of deciding the pending Motion to Dismiss.

The subject of Plaintiff's claims is a medical device known as the Ventralight ST Mesh ("Ventralight") which is an uncoated lightweight monofilament polypropylene mesh that is used for laparoscopic ventral hernia repair. On April 22, 2015, Plaintiff underwent surgery to repair a right ventral incisional hernia, and his surgeon laparoscopically implanted the Ventralight into Plaintiff's body to repair Plaintiff's hernia.

In Plaintiff's Amended Complaint he alleges that Defendants had the requisite knowledge, skill and expertise to know that: (1) implanted devices, such as polypropylene mesh,

must be chemically inert, non-carcinogenic, and able to withstand mechanical stress; and (2) implanted devices, such as polypropylene mesh, must also not be physically modified by tissue fluids, not allow tissue infiltration, not incite an inflammatory or foreign body cell reaction, and not produce allergic reactions. Plaintiff's Amended Complaint further alleges that polypropylene is not biologically inert in the human body, and is known to expand and shrink, and cause injury to patients. Plaintiff claims that polypropylene will degrade after implantation in the human body, which can lead to infection and irritation, and that scientific literature regarding the safety and effectiveness of these devices suggests that polypropylene mesh repair does not improve symptomatic results or quality of life over traditional non-mesh repair.

Plaintiff's Amended Complaint further indicates that when the Vetralight was implanted he was unaware of and was not informed of the complaints, known complications, and risks associated with polypropylene mesh. Plaintiff's Amended Complaint also alleges that at the time of his surgery, Defendants deliberately failed to disclose the risks associated with polypropylene mesh to Plaintiff's surgeon.

Less than one month after the implant surgery, on May 6, 2015, Plaintiff returned to the hospital with complaints of fever and chills. He was diagnosed with an infection at the incision site, which required wound VAC placement. Plaintiff believes that it was at this point in time that the mesh separated, detached, or otherwise failed and became exposed, requiring physicians to trim portions of the mesh protruding from his skin on several occasions. From May 6, 2015 to October 11, 2016, Plaintiff claims that a visible protrusion to the right of his scar developed and steadily worsened, eventually becoming 6 to 7 cm in diameter. Even at this juncture, Plaintiff claims that he was still unaware of the complaints, complications, and risks associated with

2

polypropylene mesh, and that he repeatedly sought medical treatment for the worsening protrusion, pain, discomfort, and secondary symptoms associated with the Ventralight failure.

In October of 2016, Plaintiff, who alleges he was still in constant pain around the operative site, was then informed the Ventralight mesh had failed and needed to be removed. The Ventralight was removed on January 27, 2017, and Plaintiff alleges that he may need additional procedures relating to injuries caused by the Ventralight.

In light of these facts, Plaintiff's Amended Complaint asserts two causes of action against each Defendant – negligence (see Counts I, III, and V) and breach of warranties (see Counts II, IV, and VI). Doc. no. 14.

## II.     STANDARD OF REVIEW

Defendants in the instant case have predicated their Motion to Dismiss on Federal Rule of Civil Procedure 12(b)(6). In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.,* 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## III. ANALYSIS

### A. Plaintiff's Negligence Claims under Pennsylvania Law

First, Defendants argue that in the medical device context, Pennsylvania only recognizes a negligence claim for: (1) negligent failure to warn, and (2) negligent preparation of a product. In support of this contention, Defendants cite to a 1973 Pennsylvania Superior Court case, *Leibowitz v. Ortho Pharmaceutical Corp.*, 307 A.2d 418 (Pa. Super. 1973) and to a lesser extent, *Baldino v. Castagna* 478 A.2d 807 (Pa. 1984). Conversely, Plaintiff argues that the more recent Pennsylvania Supreme Court case, *Lance v. Wyeth*, 85 A.3d 434 (Pa. 2014), while limiting product liability cases in the prescription drug arena (*see Carson v. Atrium Medical Corp.*, 191 F. Supp. 3d 473, 476-77 (W.D. Pa. 2016)), does not limit negligence cases as described above.[1] Plaintiff contends that Defendants have conflated Pennsylvania law governing strict liability claims with Pennsylvania law governing negligence cases.

Despite the Parties' respective reliance on *Leibowitz/Baldino* and *Lance*, this Court begins with a review of *Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971), where the Pennsylvania Supreme Court recognized a cause of action against drug manufacturers for the over-promotion of a drug that nullified otherwise adequate warnings. In other words, the State Supreme Court in *Incollingo* held that the drug's manufacturer could not be held strictly liable for any harm its

---

[1] The Court notes that all of the Parties in this case tend to rely upon Pennsylvania state case law which pertains to prescription drug cases. Even though Defendants rely upon prescription drug cases such as *Leibowitz*, in their Reply Brief, they attempt to distinguish *Lance* (the case Plaintiff cites) because it too is a prescription drug case, and further noting that "no Pennsylvania court … has extended *Lance* to a marketed prescription medical device . . . ." Doc. no. 44, p. 2. This Court has not found any definitive Pennsylvania Supreme Court decision indicating that the standard for negligence claims arising out of the prescription drug arena applies equally to negligence claims arising out of the medical device arena. However, for purposes of deciding this Motion, this Court has studied the Pennsylvania state case law governing negligence claims in prescription drug cases largely because the Parties cited to and relied upon that body of Pennsylvania case law. Despite this consideration, this Court makes no final determination whether case law borne out of negligent failure to warn claims pertaining to prescription drugs is wholly and equally applicable to negligence claims pertaining to medical devices.

product caused, but the manufacturer could be liable if it failed to exercise reasonable care to inform those for whose use the drug is supplied of the facts which make it likely to be dangerous. *Id.* at 220 n. 8. Ultimately, the determination as to whether the drug manufacturer's warning(s) about the drug are rendered meaningless in light of the sales and marketing efforts, is a question a jury must decide. *Id.* at 220.

More than a decade after *Incollingo*, the Pennsylvania Supreme Court, in *Baldino*, *supra*., reiterated its prior conclusion and applied the standards it set in *Incollingo* noting as follows:

> In *Incollingo* we held that, assuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk. *Id.* at 288, 282 A.2d at 221. Rather, such a manufacturer is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous. *Id.* at 288 n. 9, 282 A.2d at 220 n. 8 (citing Section 388 of the Restatement (Second) of Torts). We also held that a drug manufacturer can be held to have breached his duty of reasonable care by promoting its product in such a way as to nullify printed warnings. However, resolution of "whether or not the printed words of warning were in effect cancelled out and rendered meaningless in the light of the sales effort made by the detail men, were questions properly for the jury." Id. at 289, 282 A.2d at 220.
>
> In the present case the jury decided that CIBA-GEIGY did not violate the applicable standard of care. The question before us now is whether there was sufficient evidence in the record to support that determination.

*Baldino,* 478 A.2d at 244.

Two years after *Baldino,* Pennsylvania's Superior Court in *Lebowitz, supra.,* held that where there is a "proper" warning, a manufacturer of a prescription drug cannot be held liable either on a breach of warranty or strict liability in tort theory. *Lebowitz*, 307 A.2d at 457. Specifically, in its own case, the Pennsylvania Superior Court determined that the drug manufacturer provided a "proper" warning, noting that "[i]n no reported case, has a court

6

imposed liability on a prescription drug manufacturer on the basis of facts or discoveries made subsequent to the date a particular cause of action accrued." *Id.* at 458.

Over forty-five years after *Incollingo,* the Pennsylvania Supreme Court in *Lance* noted that a drug "company which is responsible for tendering into the market a drug which it knows or should know is so dangerous that it should not be taken by anyone can be said to have violated its duty of care either in design or marketing." *Id*. at 458.

Given Pennsylvania's case history with respect to drug manufacturer liability, this Court finds that in Pennsylvania, negligence claims are not as limited as Defendants suggest in their brief. In Pennsylvania, plaintiffs, such as Plaintiff herein, may maintain an action sounding in negligence for more than a negligent failure to warn and/or the negligent preparation of a product.

In order to prevail against Defendants' Motion to Dismiss, for each of Plaintiff's negligence claims, the Amended Complaint must assert: (1) the duty owed to Plaintiff by Defendants; (2) a breach of that duty; (3) the causal connection between the breach and Plaintiff's resulting injury; and (4) actual loss or damages. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n. 9 (3d Cir. 2002) (*citing Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (1998)); *Davenport v. Medtronic, Inc.*, 302 F.Supp.2d 419, 439 (E.D. Pa. 2004) (citing *Morena v. S. Hills Health Sys*., 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983)).

### 1. Plaintiff's Negligent Failure to Warn Claims

Under *Lance*, *supra.,* the Pennsylvania Supreme Court held that prescription drug manufacturers have a duty to warn of a drug's risks, and noted that the drug manufacturer's duty:

> . . . can be viewed on a continuum from the requirements of: a warning of dangers, through a stronger warning if justified by the known risks, through non-marketing or discontinuance of marketing when it becomes or should become known that the product simply should not be used in

> light of its relative risks. We agree with [plaintiff, Lance,] that this entire continuum is within the scope of the general framework of the applicable duty of care, while highlighting our disapproval of Wyeth's petition for manufacturer immunity at the most severe end of the scale. To the degree [Lance] wishes to couch the lack of due care manifested in such circumstances as negligent marketing, this is consistent with her prerogative as master of her own claim.

Id. at 459-60.

In addition, in Pennsylvania, the drug manufacturer's duty to warn is governed by the learned intermediary doctrine. *Id*. at 457-58. Under the learned intermediary doctrine, if a manufacturer provides an adequate warning of the risks associated with an "unavoidably dangerous product" (such as a prescription drug or a device) to a learned intermediary (such as a physician), the failure to provide warnings to the end user is not grounds for liability. Stated differently, when a drug (or a device, such as the Ventralight herein) is "available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor," because the physician is in the best position to evaluate the warning and then explain it to the patient. *Coyle v. Richardson–Merrell, Inc.*, 584 A.2d 1383, 1385-86 (Pa. 1991) (*quoting Incollingo, supra.* ("[T]he warning required is not to the general public or to the patient, but to the prescribing doctor."); *see also Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 31–32 (Pa. Super. 2006) (holding the learned intermediary doctrine applies to prescription medical devices as well as drugs). A prescription drug manufacturer – and thus by extension a device manufacturer – may meet its duty to warn by providing an adequate warning to a learned intermediary, as opposed to the general public or individual users. *Mazur v. Merck & Co., Inc.*, 964 F.2d 1348, 1355 (3d Cir. 1992), *cert. denied,* 506 U.S. 974 (1992).

Turning to the instant case, Defendants cite *Bergtresser v. Bristol-Myers Squibb Co.*, which is an unreported case emanating from the Middle District of Pennsylvania. *Bergtresser,*

8

2013 WL 6230489 (M.D. Pa. 2013). In *Bergtresser*, the plaintiff was prescribed Abilify for his depression, and in his Amended Complaint, the plaintiff contended that "nowhere" in the Abilify package insert did the defendant warn of the potential to contract dystonia. Despite this allegation in the Complaint, in the package insert, there was a separate section titled "Dystonia." Because of this fact (and for other reasons) the Court suggested that the plaintiff file an Amended Complaint. The plaintiff did so, but failed to address the labeling language in his Amended Complaint. In dismissing the Amended Complaint, the Pennsylvania District Court for the Middle District of Pennsylvania the Court held:

> [I]n dismissing the plaintiff's original negligent failure to warn claim, the court indicated that, in addition to his failure to address the warnings provided in the Abilify package label or any deficiencies in the labeling, the plaintiff failed to indicate what further warning should have been given, or that any alternative warning would have prevented his physician from prescribing Abilify such that his injury would have been avoided. *Bergstresser* 2013 WL 1760525, at *5 (*citing Demmler v. SmithKline Beecham Corp*., 448 Pa.Super. 425, 671 A.2d 1151, 1155 (Pa.Super. 1996); *Lineberger v. Wyeth*, 2005 WL 1274458, *3 (Pa.Ct.Com.Pl. May 23, 2005)). The plaintiff has not cured these insufficiencies in his amended complaint as to his monitoring claim. Specifically, although the plaintiff generally alleges that if "Defendant had provided appropriate and sufficient monitoring for the usage of Abilify, the Plaintiff may not have suffered Dystonia," he still has not alleged factual support for his claim. The plaintiff has not alleged what "appropriate" monitoring information should have been given, or that any such information would have prevented his doctor from prescribing him Abilify and thus prevented his contraction of dystonia, but only that the alleged appropriate information "may" have prevented him from contracting dystonia. In his opposing brief, the plaintiff argues that dismissal along this line essentially rises to the level of requiring proof of proximate cause at the pleadings stage. However, the court is not requiring that the plaintiff provide evidence in support of his factual allegations at this stage of the proceedings, but only that he make the factual allegations which would support the essential elements of his claims as is required under the law. The plaintiff cannot in a conclusory manner simply allege that his injury would not have resulted if his physician was provided with some unspecified information. He must provide sufficient factual allegations as to why the information provided to the intermediary was inadequate, what information should have been provided, and how that information would have caused the

9

intermediary to act differently which would have prevented the plaintiff's injury.

*Bergtresser*, 2013 WL 6230489, at *8.

Defendants herein claim Plaintiff, like the Plaintiff in *Bergtresser,* has also failed to do more than present conclusory allegations, without offering factual support to identify and specifically pinpoint the insufficiency of the warnings. See [doc. no. 29 at p. 7](doc. no. 29 at p. 7); doc. no 44 at p. 4-5. Plaintiff counters that unlike the plaintiff in Bergtresser, he has provided specific warning information. See [doc. no. 41 at p. 7](doc. no. 41 at p. 7). Plaintiff's Amended Complaint alleges the following about the medical device in question:

> 11. The at issue Ventralight ST Mesh is an uncoated lightweight monofilament polypropylene mesh on the anterior side with an absorbable hydrogel barrier based on Sepra Technology on the posterior side and is used for laparoscopic ventral hernia repair.
> \*   \*   \*
> 15. However, polypropylene is not biologically inert in the human body, as it is known to expand as well as shrink, and can cause serious injury to patients, significantly impacting their quality of life.
> \*   \*   \*
> 51. The subject incident and plaintiff's resulting damages and injuries were directly and proximately caused by the negligence, carelessness and recklessness of defendant Bard in the following manners:
>
>     a. In introducing and continuing to tender the at issue Ventralight ST polypropylene mesh with actual or constructive knowledge that it was unreasonably dangerous to all prospective users, including plaintiff;
>
>     b. In failing to disclose to learned intermediaries, including plaintiff's physicians, that the at issue Ventralight ST polypropylene mesh was unreasonably dangerous to all prospective users, including plaintiff;
>
>     c. In marketing, designing, and/or manufacturing the at issue Ventralight ST polypropylene mesh in a defective condition, unreasonably dangerous to prospective users, including plaintiff;
>
>     d. In marketing, designing, and/or manufacturing the at issue Ventralight ST polypropylene mesh with the knowledge that is was capable of failing, degrading, and causing serious injuries while being used in an intended and foreseeable manner;

10

e. In marketing, designing, and/or manufacturing the at issue Ventralight ST polypropylene mesh from defective and/or inadequate materials for their intended and foreseeable use;

f. In marketing, designing, and/or manufacturing the at issue Ventralight ST polypropylene mesh such that it was not biologically inert;

g. In failing to design and manufacture the at issue Ventralight ST polypropylene mesh with adequate safeguards and/or features to prevent it from degrading;

h. In marketing, designing, and/or manufacturing the at issue Ventralight ST polypropylene mesh so that it was reasonably safe for its intended and foreseeable use by the average consumer, including plaintiff and his physicians;

i. In failing to properly and adequately inspect the at issue Ventralight ST polypropylene mesh so as to discover the alleged manufacturing defects contained therein;

j. In failing to adequately warn prospective users, including plaintiff, of the unreasonable dangers of the at issue Ventralight ST polypropylene mesh;

k. In failing to adequately warn prospective learned intermediaries, including plaintiff's physicians, of the dangers and health risks of the at issue Ventralight ST polypropylene mesh;

l. In failing to provided adequate warnings in the direct-to-consumer advertising materials for the at issue Ventralight ST polypropylene mesh alerting prospective users, including plaintiff, of the unreasonable danger of failing, degrading and/or becoming infected;

m. In negligently designing and manufacturing the at issue Ventralight ST polypropylene mesh in a manner that was susceptible to failing, degrading and/or becoming infected and injuring users during its normal, intended and foreseeable operation;

n. In failing to exercise due care under the circumstances in producing and/or manufacturing of the Ventralight ST polypropylene mesh; and

o. In failing to exercise due care by continuing to market and sell a product that defendant knew or should have known was unreasonably dangerous.

Doc. no. 14. These same allegations are raised in paragraphs 66 and 81 in relation to each Defendant.

Given these allegations, the Court, taking the above statements as true solely for the purposes of this Motion to Dismiss, finds these allegations as factually specific as Plaintiff can make them at this juncture of the legal proceedings. As noted above, this Court must consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington,* 710 F.3d at 118. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court finds that the relevant facts pled by Plaintiff are as follows: (1) the device at issue is made (in whole or in part) of polypropylene, (2) which is biologically inert, and (3) Defendants failed to disclose the unreasonably dangerous nature of the polypropylene. Importantly, these allegations provide each Defendant with sufficient notice of the precise nature of their alleged failure to warn and that there is nothing more that Plaintiff needs to plead at this juncture of the proceedings, because these facts – if proven to be true – establish a plausible claim for relief.

This Court concludes that based on the allegations set forth in Plaintiff's Amended Complaint, Plaintiff has adequately asserted factual averments, which, if proven, would support a cause of action for negligent failure to warn against Defendants. Accordingly, the Court will deny the Defendants' Motion to Dismiss the Plaintiff's negligent failure to warn claims set forth in Counts I, III, and V.

### 2. Plaintiff's Negligent Manufacturing Claim

Defendants next claim that Plaintiff failed to allege sufficient facts to support a negligent manufacture claim. Plaintiff disagrees and relies upon many of the same allegations in paragraphs 51, 66 and 81 of his Amended Complaint. Specifically, Plaintiff cites to sub-paragraphs 51 (d)-(g) and (m), 66 (d)-(g) and (m), and 81(d)-(g) and (m).

This Court finds that whether or not Plaintiff ultimately proves that polypropylene is not biologically inert, which will impact his negligent warning claims, Plaintiff's negligent manufacturing devices as pled provide sufficient notice to Defendants that they may have prepared the product in a negligent manner such that it caused Plaintiff to suffer harm. Thus, the Court will deny the Defendants' Motion to Dismiss the Plaintiff's negligent manufacture claims set forth in Counts I, III, and V.

### B. Plaintiff's Breach of Warranties Claims under Pennsylvania Law

Defendants argue primarily that Plaintiff has once again failed to plead sufficient specific facts for any of the breach of warranty claims to survive its Motion to Dismiss, and secondarily, contend that Pennsylvania does not recognize a cause of action for breach of either express or implied warranties in the medical device context. The Court will address each of Defendants' two arguments, seriatim.

First, with respect to Defendants' contention that Plaintiff failed to properly plead sufficient facts to support a claim for breach of any warranty, Pennsylvania law requires that to plead a case for breach of express warranty, Plaintiff must allege: (1) Defendants breached or failed to meet its warranty promise, (2) the breach was the proximate cause of the harm, and (3) there were ensuing damages. *Samuel-Bassett v. Kia Motors America, Inc.,* 34 A. 3d 1 (Pa.

13

2011).  With respect to a breach of implied warranty, Pennsylvania law requires Plaintiff to show: (1) the existence of the implied warranty; (2) breach of the implied warranty; (3) a causal connection between Defendants' breach and Plaintiff's injury or damage; and (4) the extent of loss proximately caused by the breach.

The Court finds, again, based on the allegations set forth in Plaintiff's Amended Complaint, Plaintiff has adequately asserted factual averments, which, if proven, would support a cause of action for breach of implied and express warranties.

Turning to the second basis that Defendants provide as grounds for why the Court should dismiss the breach of warranty claims, Defendants rely upon *Soufflas v. Zimmer*, 474 F.Supp.2d 737 (E.D. Pa. 2007), for the proposition that the nature of prescription medical devices precludes claims for breach of the implied warranties of fitness for a particular purpose and merchantability.  As noted by the District Court in *Soufflas*, the conclusion that a breach of implied warranty is not an acceptable claim in a medical device case, is not something that has been determined by the Supreme Court of Pennsylvania.  Thus, the District Court in *Soufflas* predicted what it thought the Supreme Court of Pennsylvania would do.

Because there is no final state court authority on the matter, this Court will not dismiss the express and implied warranty claims at this juncture of the proceedings on the grounds that Pennsylvania does not recognize them when asserted with respect to a medical device.  Until the Supreme Court of Pennsylvania definitively states that no cause of action exists for breach of any of these warranties when the object warranted is a medical device, this Court will not dismiss these claims solely upon a prognostic basis.

Accordingly, this Court will deny the Defendants' Motion to Dismiss the Plaintiff's breach of warranty claims set forth in Counts II, IV, and VI.

## IV.  CONCLUSION

The Court will deny the Defendants' Motion to Dismiss the Plaintiff's Amended Complaint and will Order Defendants' to file an Answer on or before February 18, 2018. An appropriate Order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Registered Counsel of Record